STATE OF NORTH CAROLINA v. OLIVIA MASSENBURG

No. 707SC174

(Filed 24 June 1970)

**Criminal Law § 76—  admission of in-custody statements — failure to conduct voir dire hearing — prejudicial error**

In this prosecution for second degree murder wherein defendant testified that she killed deceased in self-defense because he had hit, kicked, stomped and threatened her, the trial court committed prejudicial error in the admission of evidence of defendant's in-custody statements that she was glad deceased was dead and that she was not hurt, where the court conducted no voir dire hearing to determine whether the statements had been freely and voluntarily made by defendant after an intelligent waiver of her rights.

APPEAL by defendant from *Bundy, J.*, 6 October 1969 Session of NASH Superior Court.

Olivia Massenburg, alias "Coot," was indicted for the murder of James Earl Williams (Williams), whose death occurred at her home near Nashville, N. C., on 31 May 1969. The solicitor announced that the State would not seek a conviction of first-degree murder but only of second-degree murder or manslaughter. Defendant pleaded not guilty.

At the trial defendant took the stand and admitted that she had stabbed Williams in the early morning of 31 May 1969, but contended she acted in self-defense. She testified that she provided a piccolo or jukebox for public use in her home; that at the time of the incident she, Williams, and others were there; that she and Williams got into an argument about some money in her purse, and that Williams hit her, temporarily blinding her; that when she regained her vision, Williams was still beating her; that she retreated to the kitchen, got a knife, and when he continued to advance on her and threatened to kill her, she stabbed him. Defendant further testified that her nose had bled and that her lip had been cut due to the blows and kicks given her by Williams.

The jury returned a verdict finding defendant guilty of second-degree murder. From judgment on the verdict imposing a prison sentence for a term of twenty-five years, defendant appealed, assigning as error (1) the admission in evidence over her objection of testimony as to certain inculpatory statements made by her while she was in custody, (2) the admission into evidence of testimony as to a statement made by one Helen Williams, not in defendant's presence, that "This is one that Coot Massenburg won't get out of," and (3) errors in the judge's charge.

*Attorney General Robert Morgan, by Deputy Attorney General Harrison Lewis and Trial Attorney Robert G. Webb, for the State.*

*Fields, Cooper & Henderson, by Leon Henderson, Jr., for defendant appellant.*

PARKER, J.

In the course of the testimony of the arresting officer, Deputy Sheriff F. L. Wood, a witness for the prosecution, the following colloquy took place:

Witness: "I got out and looked at her and she kind of roused up at that time and looked at me, and I said, 'Coot,

what has happened out here?' At first she didn't say anything.
I took hold of her to help her get up and she said —

OBJECTION.

I didn't ask her anything; she was just talking.

OBJECTION.

THE COURT: Did you say you asked her what had happened?

A   Yes, sir.

Q   At that time, Sheriff Wood, did you know what had happened?

A   Yes, sir.

Q   Did you know who had done the stabbing?

A   Yes, sir.

OBJECTION AND MOTION TO STRIKE.

THE COURT: You knew by reports?

A   Yes, sir.

THE COURT: All right, strike out that last answer. Ladies and gentlemen, don't consider what he said he knew by reports.

Q   Now after you asked her the second time what happened, did she make any statements?

OBJECTION.

A   She continued to talk from then on.

THE COURT: Let the jury go out a minute. Go in your room, ladies and gentlemen.

(The court takes a 10 minute recess, after which the jury is recalled to the courtroom.)

After I asked Coot what happened and she didn't say anything she and this small lady here that got on the stand, Edith Knight, she came to the car and assisted me in getting Coot in the car.

After Coot got in the car she roused up considerably and started talking vulgar language and I told her not to say anything else, to just sit pat, and we would be in Nashville in a little bit and she could talk all she wanted to.

After that she continued to talk more and more. She began to rouse up. At the time that I saw her, at the time, the 10

minutes we were coming to Nashville, she sobered up or got her mental faculties straightened out considerably on the way in.

Well, when I first saw her she was intoxicated enough to have been arrested for public drunkenness, should she have been on the road, but as I say, she sobered up, her mental condition got so much better before we got to Nashville and when she got here and walked up the stairs without any trouble.

I did not ask her any questions on the way to Nashville. I insisted that she not talk because she was vulgar and she was in the back seat and I was driving the car and I didn't want to have any conversation with her. I wanted to get to town.

\*   \*   \*   \*   \*

Q   On the way in after you had told her to be quiet and not say anything, what was it that she was saying?

OBJECTION.  OVERRULED.

A   She kept talking to herself and saying, 'The s.o.b., is dead and I am damn glad of it.'

OBJECTION AND MOTION TO STRIKE.  DENIED.

She did not use the initials 's.o.b.' that's the reason I asked her to keep her mouth shut and not talk. And I came on in and put her in jail and pretty soon thereafter Sheriff Strickland and the rest of them came in and I was never involved in the case any more.

Q   Sheriff Wood, about how many times would you say she made the statement on the way in that the s.o.b. is dead and I'm glad, or something to that effect?

OBJECTION.  OVERRULED.

A   It's a good 10 miles and I reckon she said it every mile coming in. I'd say approximately 10 times.

MOTION TO STRIKE.  DENIED.

When we got up to the office Smith, who stays up to the jail there, and I believe Mr. Everett, the jailor, was there, I inquired of her, I said, 'Coot, if you've got any wounds or if you have been hurt I want to know it, I don't want to find out at 12 o'clock that you've been cut or you've been stabbed,' and she said, 'No, there's nothing wrong with me.'

OBJECTION AND MOTION TO STRIKE.  OVER-RULED.

At that time I did not observe any visible blood or bruises. Never did see any. She did not ever tell me that she had been bruised or bloodied anywhere because I asked her about it.

OBJECTION. OVERRULED."

The State, in its brief, candidly admits that evidence of these statements attributed to defendant was inadmissible in the absence of any *voir dire* hearing to determine whether the statements had been freely and voluntarily made by the defendant after an intelligent waiver of her rights. *State v. Catrett*, 276 N.C. 86, 171 S.E. 2d 398. No such hearing was held and no such determination was made in this case. The State contends, however, that the admission of evidence of these in-custody statements was not prejudicial in that defendant admitted killing Williams. We disagree. These statements were prejudicial in that they strike at the very basis of defendant's plea of self-defense. The statements were made after the defendant was taken into custody. It is not entirely clear whether defendant's statement that she was glad that Williams was dead was the product of the initial question asked by Deputy Wood. It is· clear, however, that when defendant was asked by Wood whether she was hurt, she reportedly replied that there was nothing wrong with her. She testified on the stand that she only killed in self-defense because Williams had hit, kicked, stomped and threatened her. This would not be as credible to a jury after they were told that she had stated, shortly after the killing, that she was glad Williams was dead and that nothing was wrong with her.

Under the facts of this case, the statements allegedly made by defendant to Deputy Wood could well have been the product of in-custody questioning.

"[I]n-custody statements attributed to a defendant, when offered by the State and objected to by the defendant, are inadmissible *for any purpose* unless, after a *voir dire* hearing in the absence of the jury, the court, based upon sufficient evidence, makes factual findings that such statements were voluntarily and understandingly made by the defendant after he had been fully advised as to his constitutional rights." *State v. Catrett, supra.*

Since these requirements were not met in the conduct of the instant trial, prejudicial error is made to appear. We do not pass upon appellant's remaining assignments of error, since the questions posed

thereby may not arise upon a second trial. For the error noted above, defendant is entitled to a

New trial.

CAMPBELL and VAUGHN, JJ., concur.